IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 11 CR 290 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| RONALD JOHNSON | ) | |

## OPINION AND ORDER

Ronald Johnson is charged with one count of possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Johnson has moved to quash the search warrant and suppress evidence. For the following reasons, Johnson's motion [#21] will be denied.

### FACTS[1]

**I.    Application for Search Warrant**

On April 12, 2011, Special Agent Paul Matuszczak of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") applied for a warrant to search Unit 310 in the condominium building located at 728 West Jackson Street in Chicago ("Unit 310"). The affidavit requested permission to search Unit 310 for evidence of a conspiracy to possess and distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).

The application begins by describing the circumstances surrounding the arrest of an informant referred to as Individual A. Individual A had been indicted for being a felon in possession of a firearm and possession with intent to distribute heroin. He was arrested by AFT

---

[1] The facts recited herein are undisputed and are based on information contained in the court docket and the application for the warrant to search Johnson's residence. Because the motion can be resolved based on these uncontested facts, there is no need to hold an evidentiary hearing. *See United States* v. *Villegas*, 388 F.3d 317, 324 (7th Cir. 2004).

1

agents at his apartment on the morning of April 12, 2011. Later that day, the AFT obtained a search warrant for Individual A's apartment. The application and warrant for the search of Individual A's residence was incorporated by reference in Special Agent Matuszczak's affidavit.[2]

The two warrant applications show that, during a protective sweep of Individual A's apartment, AFT agents observed a substance on a bedroom dresser that appeared to be heroin. Individual A told the agents that the substance was heroin and that it was for his personal use. Individual A also told the agents that he had last used heroin the night before and that he was going to get "sick" in about two hours. Based on their training and experience, the AFT agents understood Individual A to be referring to heroin withdrawal. After Individual A was read his *Miranda* rights, he told the officers that he had a gun and 100 grams of heroin in his apartment. He gave consent to search the apartment and was then taken to the hospital. AFT agents later recovered 168 grams of a tan substance that tested positive for heroin, plastic baggies, plastic baggies containing a substance that appeared to be heroin, a digital scale, spoons, and two guns from Individual A's apartment.

AFT agents also interviewed Individual B, the spouse of Individual A. Individual B told the agents that Individual A was part of a "crew" of five or six heroin dealers who were also members of the Gangster Disciple gang. Individual B stated that Johnson was the leader of the crew. She stated that Johnson and Individual A had been involved in selling heroin for about twenty years. During the past year, Individual A had obtained heroin from Johnson, which

---

[2] In the application for a warrant to search Individual A's residence, Individual A is identified as Loren Coleman.

Individual A would then resell. Individual A told his spouse that he and Johnson regularly traveled to downtown Chicago to obtain heroin from "some Mexicans."

Individual B stated that up until a few months ago, her husband and Johnson would "bag" the heroin at their residence. Individual B stated although she was instructed to leave the room when the men started bagging, she often came out of the other room to go to the kitchen. Individual B remembered seeing Johnson and her husband in the kitchen with heroin, guns, and money in October or November 2010. A few months ago, Individual A had told his wife that he and Johnson had begun to bag heroin at Johnson's new residence in Greektown. In his affidavit, Special Agent Matuszczak testified that based on his training and experience, he knew that the residence was located across the highway from the Chicago neighborhood known as Greektown.

At some point on April 12, the AFT agents also conducted a post-*Miranda* interview with Individual A.[3] Individual A stated that he purchased approximately 150 to 200 grams of heroin per week from Johnson and that Johnson provided most of the heroin that he sold. Individual A stated that he purchased the drugs from Johnson at his condo, which was located at Unit 310 in the building at 728 West Jackson Street in Chicago. Individual A's most recent purchase from Johnson had occurred two days prior, on April 10, 2011. He had purchased 200 grams from Johnson at his condo, paying him $6,500 at the time and promising to pay the remaining $6,500 after he sold the heroin. Individual A positively identified Johnson when the agents showed him a photo.

That same day, agents searched for information about Johnson on Westlaw and on the

---

[3] It is not clear whether this interview took place before or after Individual A was taken to the hospital.

public database Accurant. The databases showed that the registered owner of Unit 310 was Francine Johnson and that Johnson was a person who was "associated" with the address. Special Agent Matuszczak testified that based on his training and experience, "when Accurant lists someone as associated with this address, it can mean a number of things, including that someone has listed a residence as their address on a utility bill, a credit card application, or even a library card."

Special Agent Matuszczak further testified that, according to law enforcement officers with the money laundering unit of the Chicago Police Department, Johnson was currently under investigation for money laundering. The CPD officers who were investigating Johnson had concluded that Francine Johnson, the owner of Unit 310, was Johnson's sister. The officers believed that Francine Johnson did not actually live in Unit 310. They had followed Johnson to and from the building on several occasions, as recently as February 25, 2011. CPD records showed that Johnson had received a parking ticket outside the building in December 2010.

Law enforcement databases showed that Johnson had previously been convicted in 2002 in state court for manufacturing and delivering a controlled substance. Special Agent Matuszczak stated that based on his training and experience, individuals who possess 150-200 grams of heroin are distributing drugs and that drug dealers often keep drugs, money, records, and weapons at their residences.

## II. Issuance of the Warrant and Search of Unit 310

Magistrate Judge Gilbert found that the warrant established probable cause to believe that Unit 310 contained evidence relating to the offense, and issued the search warrant the same day. AFT agents searched Unit 310 that evening and found approximately 4.87 kilograms of heroin,

$155,000 in cash, bags and a scale that might be used to package drugs, photographs of Johnson, and mail addressed to Johnson.

**LEGAL STANDARD**

Where "an affidavit is the only evidence presented to a judge to support a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States* v. *Mykytiuk*, 402 F.3d 773, 775–76 (7th Cir. 2005) (internal quotation marks and citations omitted). An affidavit establishes probable cause when, based on the totality of the circumstances, it sets forth sufficient evidence that would cause a reasonably prudent person to believe that a search will uncover evidence of a crime. *Id.* at 776. Such evidence requires the recitation of particularized facts that demonstrate "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States* v. *McPhearson*, 469 F.3d 518, 524 (7th Cir. 2006). This conclusion "depends on the totality of the circumstances." *Id.* As to the existence of probable cause, the decision of the magistrate issuing the search warrant is entitled to "great deference." *United States* v. *Leon*, 468 U.S. 897, 914, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

Even if probable cause is found to be lacking, evidence will not be suppressed if law enforcement officers acted under a good faith belief that the warrant was reasonable. *Id.* at 922. An officer's decision to apply for a search warrant is *prima facie* evidence that he acted in good faith. *United States* v. *Garcia*, 528 F.3d 481, 487 (7th Cir. 2008). A defendant can rebut this presumption by showing that (1) the judge issuing the warrant abandoned his detached and neutral role, (2) the officer was dishonest or reckless in preparing the affidavit, or (3) the warrant was so lacking in probable cause that the officer's belief in its existence was entirely

unreasonable. *Id.*

**ANALYSIS**

Johnson argues that the application for a search warrant for Unit 310 did not demonstrate probable cause. He makes numerous objections to the application, each of which focus on one of two issues: (1) whether the application contained sufficient indicia of the reliability of Individual A and Individual B, and (2) whether Special Agent Matuszczak was required to have firsthand knowledge of all of the information that provided the basis for his affidavit.

When the credibility of an informant is at issue, the court considers (1) whether the informant had firsthand knowledge, (2) the degree of detail provided by the informant, (3) whether the police independently corroborated the information's information, and (4) whether the informant testified at the probable cause hearing. *United States* v. *Jones*, 208 F.3d 603, 609 (7th Cir. 2000). The first two factors provide strong indicia of the reliability of Individual A and Individual B. Individual A's description of the activities at Johnson's condo was based on his firsthand participation in the drug dealing scheme over the course of many months, if not years. *Cf. United States* v. *Bell*, 585 F.3d 1045, 1050 (7th Cir. 2009) (informant's reliability not demonstrated where the affidavit lacked specifics as how and why the informant knew the information he provided to the police). In addition, Individual A described the specific amounts of heroin that he purchased from Johnson, the way in which he paid for the heroin, and the date of his most recent transaction. *Cf. id.* (informant simply stated that he saw two "plastic baggies" on a living room table and that he had seen crack cocaine in the past). Individual B's statements, though less detailed, were likewise based on firsthand knowledge of her husband's drug dealing activities and contained as much information as might reasonably be expected from someone

who was not a member of the drug dealing crew.  Moreover, Individual B's assertion that she was told to "leave the room" whenever Individual A and Johnson were bagging heroin provides a plausible explanation for her lack of knowledge regarding the specifics of the drug transactions.

Furthermore, Individual A's statements were against his penal interest and carry a presumption of reliability.  *See United States* v. *Olson*, 408 F.3d 366, 371 (7th Cir. 2005); *United States* v. *Carmichael*, 489 F.2d 983, 986 (7th Cir. 1973).  While it is true that the court must view the statements of a recently-arrested informant with a "greater dose of skepticism," *Olson*, 408 F.3d at 370–71, it is difficult to imagine how Individual A could have successfully shifted blame away from himself by describing his regular drug transactions with Johnson in detail.  To the contrary, by stating that he purchased 150 to 200 grams of heroin per week, Individual A showed that he was not an occasional or inexperienced dealer.  He also indicated that his primary motivation was to protect his wife, even at his own expense, when he told the ATF agents, "That shit up there [in the apartment] ain't hers, let's work out a deal."  In addition, an informant such as Individual A who is caught red-handed has a "strong incentive" to provide accurate information to the police.  *Id.* at 371.  Indeed, Special Agent Matuszczak testified that Individual A is "cooperating in hopes of receiving consideration on those charges."

Of more concern is the fact that Individual A stated that he had used heroin the night before and that he was soon going to suffer from heroin withdrawal.  Individual A's physical illness does not make his statements *per se* unreliable, however.  *See United States* v. *Walker*, 272 F.3d 407, 412–13 (7th Cir. 2001) (confession not involuntary even though defendant was suffering from the most painful hours of heroin withdrawal).  In addition, the statements

7

provided by Individual B were consistent with Individual A's firsthand description of his own activities. This indicates that Individual A did not fabricate the details of his activities at time of his arrest because he was high on drugs or because he wanted to shift the blame to Johnson.

Individual B's statements to the ATF agents were less incriminating than those of Individual A. The limited significance of Individual B's statements, however, is that they provided some corroboration for the more detailed information that was provided by her husband. Individual B's statements were sufficiently detailed to serve this purpose. *See United States* v. *Wiley*, 475 F.3d 908, 915 (7th Cir. 2007) ("no single piece of information need satisfy every relevant consideration before we may consider it"). Moreover, to the extent that Individual B's statements constituted hearsay within hearsay, it is significant that Individual A's statements to his wife were, like his statements to the ATF agents, against his penal interest. *See Carmichael*, 489 F.2d at 986; *United States* v. *Roth*, 391 F.2d 507, 511 & n.4 (7th Cir. 1968). Taking all of the circumstances of Individual A's arrest into account, both Individual A and Individual B's statements were sufficiently reliable to be considered as support for a probable cause determination.

Finally, the police provided independent corroboration of Individual A and Individual B's assertions that Johnson spent a significant amount of time at Unit 310. Public databases indicated that the condo was registered to Francine Johnson, who law enforcement believed to be Johnson's sister. While the court does not give much weight to the fact that Johnson was "associated" with the address, CPD officers had followed Johnson to his condo on numerous occasions. Given that Individual A stated that he had just purchased drugs from Johnson over the previous weekend, it was reasonable to conclude there would still be drugs at the condo. The

time lapse between the last time agents had seen Johnson at his condo (February 25) and the date of the search warrant application (April 12) is less significant in light of Individual B's statement to the AFT agents regarding the recent drug purchase. The ongoing money laundering investigation and the record check showing Johnson's prior drug conviction also provide "some corroborative value." *See Olson*, 408 F.3d at 371–72. "[W]hile the weight of each item when assessed separately may be slight, together they suffice to corroborate [the informants'] story; and, when viewed under the totality-of-the-circumstances standard, altogether provide enough to establish probable cause." *Id.* at 372 (quotations and citations omitted); *see also United States* v. *Harris*, 464 F.3d 733, 740 (7th Cir. 2006) ("the whole may be more than the sum of the parts when assessing probable cause").

Johnson also argues that Special Agent Matuszczak's application was insufficient because it did not indicate that he interviewed Individual A or B, name the various ATF agents or CPD officers that provided information about the investigation, or indicate that Special Agent Matuszczak was personally involved in all aspects of the AFT and CPD investigations. In both of the affidavits that he submitted to the court on April 12, Special Agent Matuszczak stated:

> The statements in this affidavit are based on my training and experience, my participation in this investigation, and information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

It is well-settled that another law enforcement officer is a reliable source and that an affiant need not make a special showing of reliability regarding information that he obtained from other officers. *United States* v. *Ventresca*, 380 U.S. 102, 111, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965); *United States* v. *McCormick*, 309 F.2d 367, 372 (7th Cir. 1962) ("We refuse to hold that . . .

9

information, when communicated in the course of official business by the agents among themselves, is excluded by the hearsay rule, so as to require the quashing of a search warrant issued upon the affidavit of one of the agents setting forth his reliance upon such information."); *see also* Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 3.5(a) (4th ed. 2004). Therefore the court may accept Special Agent's description of what other law enforcement officers told him about their investigation of Johnson. By the same token, Special Agent Matuszczak's description of what Individual A and Individual B told other ATF agents is presumed to be reliable. Johnson argues, unconvincingly, that Special Agent Matuszczak may have received information from untrustworthy civilian sources because he states that some of the information in the affidavit is "from persons with knowledge regarding relevant facts." It is clear from the face of the affidavit that the key facts, relayed by Individuals A and B to ATF agents during their interviews, must have been relayed to Special Agent Matuszczak by ATF agents. It is also clear that the details regarding the database searches and CPD investigation were related by law enforcement officers to Special Agent Matuszczak. *See* Matuszczak Aff. ¶¶ 14–15 (using phrases such as "agents performed a Westlaw search," "[a]ccording to law enforcement officers," "[b]ased on their investigation, these officers have concluded," and "[t]hese officers stated"). The Supreme Court has cautioned against reading affidavits in a "hypertechnical, rather than a commonsense, manner." *Ventresca*, 380 U.S. at 109.[4] Taking the

---

[4] *Ventresca* considered an affidavit that is similar to the one presented here. In *Ventresca*, the Supreme Court held that an affidavit had demonstrated probable cause where the Investigator for the Alcohol and Tobacco Tax Division of the Internal Revenue Service testified that the relevant facts were "[b]ased on observations made by me, and based on information received officially from other Investigators attached to the Alcohol and Tobacco Tax Division assigned to this investigation, and reports orally made to me describing the results of their observations and investigation." The Court rejected the First Circuit's conclusion that the affidavit presented problems of hearsay within hearsay because some of the information might have come from unreliable anonymous informers who gave information to

10

foregoing into account, the magistrate judge properly granted a search warrant on the strength of Special Agent Matuszczak's affidavit.

Even if the court were to conclude that the search warrant was not supported by probable cause, Johnson has not demonstrated that the officers did not rely on the warrant in good faith. Johnson asserts that the affidavit was so lacking that no reasonable officer could have relied upon it because the affidavit does not establish how Special Agent Matuszczak obtained his information or whether all of the information came from law enforcement officers. For the reasons discussed above, this argument is unavailing. Johnson's motion to quash and suppress evidence will be denied.

## CONCLUSION AND ORDER

Johnson's motion to quash and suppress evidence [#21] is denied.

Dated: Sept. 20, 2011              Enter:_____

                                               JOAN HUMPHREY LEFKOW
                                               United States District Judge

---

investigators that was then passed on to the affiant.