IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 11 CR 290 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| RONALD JOHNSON | ) | |

**OPINION AND ORDER**

On September 20, 2011, this court denied Ronald Johnson's motion to quash search warrant and suppress evidence seized from his condominium unit located at 728 West Jackson Street in Chicago. Johnson filed a motion to reconsider on September 28, 2011, reiterating one of the arguments he had made in his original motion and which the court had rejected. Soon thereafter, Johnson retained new counsel. The court continued the motion to reconsider and allowed Johnson's new counsel to supplant the motion with a new motion to suppress. For the following reasons, Johnson's renewed motion to suppress [#44] will be denied.

**LEGAL STANDARD**

Johnson requests a hearing under *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), to determine whether the warrant for the search of his condominium unit was supported by probable cause. *Franks* requires the court to hold an evidentiary hearing if a defendant makes a substantial preliminary showing that (1) the warrant affidavit included a false statement or omitted a statement, (2) the statement was made or omitted either knowingly and intentionally or with reckless disregard for the truth, and (3) the misrepresentation was necessary to the determination of probable cause. *See, e.g.*, *United States* v. *McNeese*, 901 F.2d 585, 594–95 (7th Cir. 1990), *overruled on other grounds by United States* v. *Vance*, 236 F.3d 820

1

(7th Cir. 2000); *Franks*, 438 U.S. at 155–56. If the allegation of perjury or reckless disregard is subsequently proved by a preponderance of the evidence, then the false material must be excluded from the warrant affidavit. *Franks*, 438 U.S. at 156. The search warrant must be voided and the fruits of the search excluded if the remaining material in the affidavit does not establish probable cause. *Id.*

**ANALYSIS**

Johnson argues that the warrant affidavit sworn by Special Agent Matuszczak omitted material information that fatally undermined the credibility of Loren Coleman and his wife, Charisse Coleman, identified as Individual A and Individual B in the affidavit.[1]

The first alleged omission comes from interviews that ATF agents conducted with Charisse Coleman at her residence on April 12, 2011. In his motion to suppress, Johnson asserts that Charisse Coleman told ATF agents that her husband was afraid of Johnson because he owed Johnson approximately $16,000 that he had stolen from Johnson two years ago. Dkt. #44 at 5. Johnson further asserts that Charisse Coleman stated that she was paying off her husband's debt at $200 per week. Johnson argues that these statements show that Charisse Coleman had a motive to fabricate information in order to obtain Johnson's incarceration and to shift the focus of the government's investigation to Johnson in order to hide her own involvement with drug dealing.

As Johnson concedes, his motion misstates the facts. In fact, the ATF report indicates that Charisse Coleman stated that *Johnson* was afraid of *her husband*. The report states, in

---

[1] The court assumes familiarity with the facts set forth in the application for search warrant, described in the September 20, 2011 opinion and order denying Johnson's first motion to suppress.

relevant part:

> Mrs. Coleman stated that "Little Ron" [Johnson] was scared of "Ricco" [Loren Coleman]. Mrs. Coleman related that sometime in 1992, "Ricco" stole a large amount of heroin and approximately $16,000.00 from "Little Ron." Mrs. Coleman related that "Little Ron" didn't do anything to "Ricco." Mrs. Coleman related [that] "Little Ron" stopped talking to "Ricco" for two years. Mrs. Coleman further related that she had agreed to pay "Little Ron" $200.00 a week to pay off the debt and that was the reason why they started talking again.

Gov't Ex. C, at ¶ 24. This statement does not support the conclusion that Charisse Coleman wanted to secure Johnson's incarceration so that she and her husband could avoid paying off a debt or because they were afraid of Johnson. The debt was approximately twenty years old. Johnson never attempted to collect.

To the extent that the statement suggests that Charisse Coleman was involved in her husband's drug dealing, it is "of such minimal significance that its omission could not reasonably have affected the magistrate's judgment in finding probable cause to search." *McNeese*, 901 F.2d at 594. It is clear from the search warrant affidavit that Charisse Coleman knew of her husband's drug dealing activities.[2] Therefore the magistrate judge could readily have discerned that Charisse Coleman might have a motive to embellish Johnson's role in the drug dealing scheme in order to deflect attention from herself. Moreover, nothing in the quoted portion of Charisse Coleman's statement to the ATF agents indicates that she was dealing drugs with her husband. Her statement is not inconsistent with the information in the search warrant affidavit. The fact that Charisse Coleman attempted to pay off a debt related to stolen heroin

---

[2] The warrant affidavit includes the fact that Charisse Coleman had stated that up until a few months prior, Johnson and her husband would "bag" heroin at her residence and that she had passed through the room where the men were completing this task. It also states that she remembered seeing Johnson and her husband in the kitchen with heroin, guns, and money in October or November 2010. In addition, it states that Charisse Coleman overheard several phone conversations between her husband and Johnson in 2011 that involved code words for heroin deals.

does not have any greater significance than the other, more recent, conduct that is set forth in the search warrant affidavit.

Johnson also suggests that Charisse Coleman's statement reflects poorly on her husband's credibility because it shows that he was willing to steal. But the significance of the twenty-year old theft from Johnson is minimal, particularly when compared to the information regarding Loren Coleman's criminal history that *was* included in the affidavit. The search warrant affidavit states Loren Coleman had three previous convictions for manufacturing/delivering a controlled substance, one conviction for passing a forged check, one conviction for possession of a controlled substance, and one conviction for aggravated unlawful discharge of a firearm in a vehicle. Loren Coleman's conviction for passing a forged check and his prior drug dealing convictions are more probative to his veracity and any general suspicion of law enforcement than the alleged twenty-year-old theft. For all of these reasons, the alleged omission was not material.

The second alleged omission relates to information from Loren Coleman's interview with ATF agents. Johnson states that Loren Coleman contradicted his wife's statement regarding a $16,000 "debt" by stating that he had been fired by Johnson after he "messed up money during a drug transaction." Johnson argues that the discrepancy between Loren Coleman's statement and his wife's statement shows that Loren Coleman or Charisse Coleman must have been lying.

The government responds that Loren Coleman's statement that he "messed up" a drug transaction is taken from a report of a proffer interview that took place on May 9, 2011, nearly one month after the search warrant affidavit was submitted. Johnson does not contest the government's assertion. Thus, Loren Coleman's statement was not "omitted" from the search

warrant affidavit because it was not even known to law enforcement at the time the affidavit was signed. Moreover, it is clear that Loren Coleman was talking about a different drug transaction that occurred in 2008, not 1992. *See* Gov't Ex. D, at ¶ 11.

The third alleged omission relates to Loren Coleman's statements to ATF agents regarding the amount of drug dealing at his apartment. Johnson asserts that Loren Coleman never told ATF agents that he was dealing drugs out of his apartment, and that this information should have been included in the search warrant affidavit. Charisse Coleman, on the other hand, told ATF agents that Johnson and her husband had been dealing drugs out of their apartment up until a few months ago. Johnson argues that the inconsistency between Loren Coleman's and Charisse Coleman's description of the drug dealing calls Loren Coleman's credibility into question.

Loren Coleman's statement to the ATF agents is not inconsistent with the search warrant affidavit or with his wife's statement. The search warrant affidavit states that Loren Coleman admitted that he had about 100 grams of heroin in his apartment. The affidavit states that when Coleman was asked if he was dealing heroin, "he said that he was just 'holding' it." Special Agent Matuszczak testified that based on his training and experience persons who possess 100 grams of heroin are keeping the heroin to distribute to others rather than for personal use. The search warrant affidavit states that ATF agents later recovered 168 grams of heroin as well as plastic baggies, a digital scale, and spoons. Thus, Loren Coleman's evasive answer to the ATF's question was thoroughly undermined by Special Agent Matuszczak's testimony and the unmistakable evidence of drug dealing that was recovered from his apartment. Consistent with the search warrant affidavit, the ATF report cited by Johnson explains that "Coleman stated that

he regularly sells drugs and is often in possession of large quantities of heroin and money." Def.'s Ex. B at 1502. Coleman made this statement after he was questioned about what, if any, contraband he possessed at his residence. *Id.* He also stated that he kept a gun at his apartment because he was afraid that someone would rob him of his drugs. *Id.* He described purchasing 200 grams of heroin per week from Johnson and another thirty-six to seventy-two grams of heroin from another group of individuals "a couple of times a week." *Id.* at 1030. The logical inference from the ATF reports is that Coleman dealt drugs out of his apartment. To the extent that Coleman did deny dealing drugs from his apartment, the information was disclosed in the search warrant affidavit. The fact that the affidavit lacked additional details regarding the extent to which drug dealing took place in Loren Coleman's apartment is not material.

The fourth alleged omission relates to Loren Coleman's past criminal conduct. Charisse Coleman told ATF agents that she recalled her husband telling her a story "about several individuals he shot." Def.'s Ex. C, at ¶ 9. According to Charisse Coleman, when Loren Coleman was thirteen or fourteen years old he had shot two unknown men who were stealing from the drug dealer that he worked for. *Id.* ¶ 10. Loren Coleman did not know whether he killed either individual. Charisse Coleman also described an incident that occurred in February 2011, when her husband drove her to the area of 83rd Street and Ellis Avenue and asked her to wait in a parked car for twenty to thirty minutes. *Id.* ¶ 8. When Loren Coleman returned to the car, he gave a handgun to his wife. *Id.* She understood that she was holding the gun because if they were stopped by the police they would be less likely to search a woman. *Id.* Charisse Coleman stated that she could not recall hearing any gunshots and that her husband did not seem to be in any rush when he returned to the car and that she did not see any blood or other signs of

a struggle.  *Id.*

As the government notes, the search warrant affidavit disclosed that Loren Coleman had an extensive criminal history that included a prior conviction for unlawful discharge of a firearm in a vehicle.  In addition, the criminal conduct described by Charisse Coleman is not of the type that would be probative to Loren Coleman's character for truthfulness, which is the key issue for a probable cause determination.  Moreover, the shootings would have taken place taken place approximately thirty-three years ago, as Loren Coleman is now forty-seven years old.  The February 2011 incident occurred more recently, but its significance is unclear.

Johnson argues that the information regarding Loren Coleman's additional criminal activity should have been included because he failed to disclose the alleged shootings during his interviews with ATF agents and then provided contradictory information when the agents asked him about one of the incidents during a follow-up interview.  The ATF reports cited by Johnson indicate, however, that Loren Coleman provided detailed information regarding his drug dealing activities.  The reports do not indicate that Coleman was asked about prior violent criminal conduct or whether he had prior criminal convictions.  Therefore there is no clear inconsistency between the information provided by Loren Coleman and the information provided by his wife.  In any event, Coleman's prior convictions were disclosed in the search warrant affidavit.

The allegedly contradictory statements cited by Johnson were not made until Loren Coleman's proffer interview, which occurred nearly a month after the search warrant was issued.  Therefore the information was not known to agents at the time the search warrant affidavit was executed.  Nevertheless, Johnson argues that the contradictory information should be considered a material omission under *Franks* because the agents failed to conduct a sufficiently detailed

7

interview before preparing the search warrant affidavit. This argument is unavailing. Loren Coleman and his wife were interviewed on the same day. That the agents may not have cross-checked every detail of each interview does not indicate that they "chose to turn a blind eye to the information they obtained." *See* Dkt. #48 at 6. Moreover, the focus of the court's *Franks* analysis must be what the affiant knew, not what he could have known if he had left no stone unturned. *See McNeese*, 901 F.3d at 594 ("The omission of a fact from an affidavit is material only if it amounts to deliberate falsehood or reckless disregard for the truth. . . . Mere negligence by the affiant does not constitute reckless disregard for the truth."). For all of these reasons, Johnson has not demonstrated that he is entitled to a *Franks* hearing and his motion to suppress must be denied.

## CONCLUSION AND ORDER

Johnson's motion to reconsider and his renewed motion to suppress evidence [#29, 44] are denied.

Dated: June 27, 2012        Enter:_____

                                                          JOAN HUMPHREY LEFKOW
                                                          United States District Judge